**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **BRANDELYN ZAR,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 09-cv-249** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **OFFICER JASON PAYNE, et al.,** | : | **Magistrate Judge Abel** |
| | : | |
| **Defendants.** | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on the Motion of Defendants Jason Payne and Justin Trowbridge for Summary Judgment. *Motion*, Doc. No. 17. Defendants request summary judgment on all claims against them. *Complaint*, Doc. No 2. For the reasons that follow, Defendants' motion is **GRANTED** in part and **DENIED** in part.

**II. FACTUAL BACKGROUND**

**A. April 25, 2008**

At approximately 10:30 p.m. on April 25, 2008, Htut Zar ("Mr. Zar") called the Mt. Vernon Police Department and waited outside of his house at 308 East Burgess Street in Mt. Vernon, Ohio for them to arrive. Officers Jason Payne ("Payne") and Justin Trowbridge ("Trowbridge") of the Mt. Vernon Police Department responded to Mr. Zar's call and arrived separately.

Upon approaching Mr. Zar, Trowbridge noticed a substance on Mr. Zar's right shoulder and neck that appeared to him to be blood. Both parties agree that Mr. Zar explained that the

substance was chocolate but disagree as to the particulars of Mr. Zar's explanation.  The Defendants assert, supported by their own sworn affidavits, that Mr. Zar informed the officers that he and his wife, Brandelyn Zar ("Ms. Zar"), had had an argument during which Ms. Zar had thrown a glass dish containing ice cream and chocolate sauce at him.  According to the Defendants, Mr. Zar told the officers that he was holding his and Ms. Zar's infant son in his arms when Ms. Zar threw the glass dish at him.  Mr. Zar told Trowbridge that he was concerned for the safety of his son, then in the house with Ms. Zar.

The Plaintiff asserts, supported by a sworn affidavit from Mr. Zar, that Mr. Zar told the officers that his wife had thrown a paper cup containing a Wendy's Frosty at a window of the house during an argument.  Some of the Frosty had spattered on Mr. Zar.  He further asserts in his affidavit that he did not tell the officers that he was concerned for the safety of his child and that he had only called the police for help in getting some of his clothing from the house and for advice on where to spend the night.

While the officers were speaking with Mr. Zar, Ms. Zar was throwing Mr. Zar's belongings onto the front lawn and yelling that she wanted Mr. Zar to leave.  When Payne tried to approach Ms. Zar, she closed her door and turned off her interior lights.  Payne then knocked on her door.  Ms. Zar opened the door in response to the knock with her sister, Kaitlyn Meadway ("Meadway"), standing behind her.  Medway was holding the Zar child in her arms; she and the child were present during the entire encounter.  Ms. Zar told Payne that she did not want to talk to the police or to her husband and shut the door.  Trowbridge joined Payne at the door and knocked.  Ms. Zar again opened the door, stood in her doorway, told the officers she did not want to speak with them, and tried to shut the door.

-2-

According to Ms. Zar, and supported by her own affidavit and the affidavits of Mr. Zar and Meadway, before Ms. Zar could close the door, Trowbridge reached into her house, grabbed her wrist, and jerked her outside.  Payne grabbed her other wrist and helped Trowbridge pull her from her home.  At no time did either officer warn Ms. Zar that she was under arrest or would be arrested.  Meadway has stated that the officers' decision to arrest Ms. Zar appeared to her to be the result of an epithet Ms. Zar directed at the officers just before they grabbed her.

The Defendants allege that Ms. Zar was agitated, cursing at the officers, and pointing her finger in Trowbridge's face.  Trowbridge decided to place Ms. Zar under arrest for impeding their investigation into the safety of the infant.  He informed Ms. Zar that she was under arrest and tried to take hold of her right wrist to secure it.  The accounts of the arrest from this point forward diverge even between the Defendants.  Trowbridge in his Supplementary Report recounted that Ms. Zar pulled her wrist back, closed her fist, and punched him in the mouth.  The officers again grabbed Ms. Zar and moved her away from the house and towards a patrol car.  Because Ms. Zar was flailing her body, the officers took her to the ground in their attempt to regain control.  Once they had gotten her to the ground, the officers secured her hands behind her back, handcuffed her, and advised her she was under arrest.  While trying to walk her to a patrol car, Trowbridge picked Ms. Zar up by the right arm, allowing her to flip around and kick Payne in the throat and face.  When this happened, she slipped from Trowbridge's grip and fell to the ground.

Payne reported an account that differs in the details but is materially similar to Trowbridge's.  He recounts that Ms. Zar punched Trowbridge in the face after they had both grabbed one of her arms and were escorting her away from the house.  The officers continued to

escort Ms. Zar towards the patrol car, and Ms. Zar continued to struggle by moving her legs and arms around. Trowbridge then picked Ms. Zar up, she kicked Payne in the throat, and Trowbridge dropped her on the ground. Once Ms. Zar was on the ground, the officers handcuffed her.

The Plaintiff's version, based on the recollections of Meadway and Mr. Zar,[1] presents the picture of two large police officers forcefully throwing around a small woman; Meadway even avers that the officers savagely beat Ms. Zar. The Plaintiff's witnesses recount that the officers tossed Ms. Zar into her yard, face down in the mud; jumped on top of her; and handcuffed her. The officers did not tell her she was under arrest until after she was handcuffed. The Plaintiff admits that she kicked Payne but states that it happened accidentally when the officers picked her up into the air. When Payne was kicked, the officers dropped Mrs. Zar back into the mud, causing her great pain. The Plaintiff asserts that at no time did she punch Trowbridge in the face.[2]

The Defendants allege that both officers sustained physical injuries and tears in their clothing as a result of their encounter with Ms. Zar. Ms. Zar also claims that she sustained physical injuries as a result of the encounter.

_____

[1]Ms. Zar alleges that she recalls only bits and pieces after the initiation of the arrest at her doorstep. Prone to panic attacks, she blacked out and has only a partial memory of the rest of the night.

[2]The Defendants attempt to allege that the Plaintiff admits that she punched Trowbridge. In her deposition testimony, the Plaintiff admits that she was struggling to get away from the officers and says that *if* Trowbridge got hit, it was accidentally during that struggle. She affirmatively states that she did not hit Trowbridge in the face.

## B.  Arrest and Conviction

Ms. Zar was arrested for persisting disorderly conduct under Mt. Vernon Ordinance 509.03(E), with resisting arrest under Mt. Vernon Ordinance 525.09, and with assault on a police officer.  With the assistance of counsel, the Plaintiff entered a plea of no contest to the charge of persisting disorderly conduct on January 29, 2009.  She was found guilty of that charge and sentenced to a fine of $150 plus court costs.  On February 20, 2009, the Plaintiff pleaded guilty to one count of obstructing official business in violation of Ohio Rev. Code. Ann. § 2921.31(A) in exchange for the dismissal of the assault charge.  The Plaintiff was sentenced on March 17, 2009 to three years of Community Control, thirty days in the Knox County Jail, submission to an out-patient drug and alcohol treatment program, and submission to drug and alcohol use monitoring.  The balance of the Plaintiff's jail sentence was suspended on March 23, 2009.

## C.  This Lawsuit

The Plaintiff filed her complaint before this Court on April 1, 2009 against Defendants Jason Payne and Justin Trowbridge.  *Complaint*, Doc. No. 2.  She alleges two claims under the Fourth and Fourteenth Amendments to the United States Constitution: (1) that the Defendants unlawfully violated her rights by arresting her in her home without a warrant; and (2) that the Defendants employed unnecessary and unjustified physical force against her.  The Plaintiff is seeking compensatory damages, punitive damages, and attorneys' fees and costs.  The Defendants filed their Motion for Summary Judgment on March 29, 2010 requesting dismissal of all claims.  *Motion*, Doc. No. 17.  This motion has been fully briefed and argued and is now ripe for decision by this Court.

### III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); *see also Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id*.

## IV.  LAW AND ANALYSIS

The Plaintiff has sued under 42 U.S.C. § 1983, which "by its terms does not create any substantive rights but rather 'merely provides remedies for deprivations of rights established elsewhere.'"  *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)).  To prevail on her § 1983 claims, the Plaintiff "'must establish that a person acting under color of state law deprived [her] of a right secured by the Constitution or laws of the United States.'"  *Id.* (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001)).

The Defendants have moved for summary judgment on both of the claims against them; the Plaintiff opposes the motion in its entirety.  As a preliminary matter, the Court notes that there is some confusion in the briefs as to whether the Plaintiff's First Claim is for warrantless arrest alone or for the warrantless arrest and warrantless entry into the Plaintiff's home.  The First Claim of the Complaint reads as follows: "The Conduct of Defendants Payne and Trowbridge of arresting Plaintiff Zar in her home without an arrest warrant constitutes a violation of Zar's rights guaranteed by the Fourth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. Section 1983."  Both parties have submitted arguments with respect to the warrantless arrest and the warrantless entry claims.  The Court therefore concludes that the Defendants have received adequate notice of both allegations under the "course of proceedings" test applied to ambiguous § 1983 claims.  *Cummings v. City of Akron*, 418 F.3d 676, 681 (6th Cir. 2005) ("We apply a 'course of the proceedings' test to determine whether defendants in a § 1983 action have received notice of the plaintiff's claims where the complaint is ambiguous.") (quoting  *Moore v. City of Harriman*, 272 F.3d 769, 774 (6th Cir. 2001) (*en banc*) ("Subsequent

-7-

filings in a case may rectify deficiencies in the initial pleadings."). The Court will address the warrantless arrest, warrantless entry, and excessive use of force claims in turn.

### A. Warrantless Arrest

The Defendants argue that the Plaintiff's warrantless arrest claim is barred because the Plaintiff's state court convictions are entitled to preclusive effect in this court and establish as a matter of law that there was probable cause for her arrest.

The Sixth Circuit has ruled that pleas of guilty or no contest in a state court preclude a person from later bringing a § 1983 action alleging unlawful arrest in violation of the Fourth Amendment. *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1988). The two plaintiffs in *Walker* were arrested for disorderly conduct and reckless driving, respectively, under Ohio law. *Id.* at 140. Both of the plaintiffs entered no-contest pleas in open court with the assistance of attorneys; the state court found them guilty and sentenced them to a fine. *Id.* In their federal § 1983 action, they asserted that the arresting officers violated their rights under the Fourth Amendment "by arresting them without probable cause and then placing them in jail." *Id.* at 141. The district court denied the defendants' qualified immunity defense raised in their motion for summary judgment, but the Sixth Circuit reversed, concluding that "the pleas in state court made by [the plaintiffs] and the finding of guilt and imposition of fines by that court estop plaintiffs from now asserting in federal court that the defendant police officers acted without probable cause." *Id.* at 142. *See also Daubenmire*, 507 F.3d at 389-90 (declining to overrule *Walker* and holding that "Plaintiffs are estopped by their pleas in state court from now challenging the reasonableness of their arrest").

-8-

*Walker* compels the same result in this case.  Much like the plaintiffs in *Walker*, the

Plaintiff in the case *sub judice* was arrested and convicted under Ohio law following her plea of

no contest to the charge of persisting disorderly conduct and her plea of guilty to the charge of

obstructing official business.  Through these pleas, the Plaintiff has admitted to the factual basis

for her arrest*, see Walker*, 141-42, and now cannot challenge the existence of probable cause.

The Defendants' Motion is accordingly **GRANTED** and the Plaintiff's claim for unlawful arrest

(First Claim) is **DISMISSED**.[3]

### B.  Qualified Immunity

The Defendants argue that the doctrine of qualified immunity forecloses the Plaintiff's

claims for warrantless entry into her home and use of excessive force.

According to the doctrine of qualified immunity, "government officials performing

discretionary functions are generally shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person should have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity involves the following three-step inquiry:

---

[3]Because the Court's conclusion under *Walker* disposes of this claim, the Court does not need to address the Defendants' arguments that the arrest was supported by probable cause and that they are entitled to qualified immunity.  It also does not need to address the Defendants' contention that the claim is barred by *Heck v. Humphry*, 512 U.S. 477, 486-87 (1994) (holding that § 1983 plaintiff may not seek damages where judgment in plaintiff's favor "would necessarily imply the invalidity" of a conviction or sentence not yet invalidated on direct appeal, by executive order, or through habeas corpus).  In that regard, however, the Court notes that the Plaintiff would in any case be entitled to the *Heck*-exception established in *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 601 (6th Cir. 2007) for plaintiffs "precluded 'as a matter of law' from seeking habeas redress."

*First*, we determine whether, based upon the applicable law, the facts viewed in

the light most favorable to the plaintiffs show that a constitutional violation has

occurred.  *Second,* we consider whether the violation involved a clearly

established constitutional right of which a reasonable person would have known.

*Third,* we determine whether the plaintiff has offered sufficient evidence to

indicate that what the official allegedly did was objectively unreasonable in light

of the clearly established constitutional rights.  If the answer to all three questions

is "yes," qualified immunity is not proper.

*Champion v. Outlook Nashville, Inc*., 380 F.3d 893, 901 (6th Cir. 2004) (citations omitted).  The

Court need not consider these questions in a particular order.  *Pearson v. Callahan*, 129 S. Ct.

808, 821 (2009) ("[T]here will be cases in which a court will rather quickly and easily decide

that there was no violation of clearly established law before turning to the more difficult question

[of] whether the relevant facts make out a constitutional question at all.").

The second prong requires the Court to determine whether a right was "clearly

established" by examining "whether it would be clear to a reasonable officer that his conduct

was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.  Because most rights are

"clearly established" at some level of generality, the analysis of whether a right is "clearly

established" must be "undertaken in light of the specific context of the case, not as a broad

general proposition."  *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6th Cir. 2008).  Summary

judgment should be denied if the undisputed facts, taken in the light most favorable to the

plaintiff, show that the defendants violated clearly established rights or if, under the third prong,

there is a factual dispute "such that it cannot be determined before trial whether the defendant

did acts that violate clearly established rights."  *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988) (citing *Green v. Carlson*, 826 F.2d 647, 650-52 (7th Cir.1987)); *see also Vakilian v. Shaw*, 335 F.3d 509, 515 (6th Cir. 2003) (stating that summary judgment on qualified immunity grounds is improper "if genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right"); *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) ("Where, as here, the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability. This is especially true considering that the District Court must view the facts in the light most favorable to the plaintiff on a motion for summary judgment.") (internal citations omitted).

Against this backdrop and as explicated below, the Court concludes, first, that the facts taken in the light most favorable to the Plaintiff show that the Defendants violated her clearly established right to be free of warrantless entry into her home and, second, that factual disputes preclude a determination that the Defendant is entitled to qualified immunity on the excessive force claim.  The Court therefore **DENIES** summary judgment with respect to Defendants' qualified immunity defense as applied to the Plaintiff's Fourth Amendment claims for warrantless entry and excessive use of force.

### 1.  Warrantless Entry

The Plaintiff alleges that the Defendants violated her right to be free from warrantless entry when they arrested her while she was inside her home.  Defendants argue that they are entitled to qualified immunity because they were constitutionally permitted to effectuate their arrest of the Plaintiff in her doorway; the Plaintiff argues that no such right exists.  In the alternative, the Defendants argue that there were exigent circumstances for their entrance into the

Plaintiff's home.  The Defendants specifically invoke the need to assure the safety of the Zar child and the need to assure their own safety after the Plaintiff punched Defendant Trowbridge in the face.  The Plaintiff contends that reasonable officers in the Defendants' position would not have concluded that exigent circumstances existed because Mr. Zar never told the Defendants that his child was in danger, the officers could see the child safely in Meadway's arms during the encounter, and the Plaintiff never punched Defendant Trowbridge.

### a.  Whether a Constitutional Violation Has Occurred

"A 'person may not be arrested at home without a warrant, regardless of the existence of probable cause, absent exigent circumstances.'"  *Estate of Bing v. City of Whitehall*, 456 F.3d 555, 564 (6th Cir. 2006) (quoting *United States v. Bradley*, 922 F.2d 1290, 1293 (6th Cir. 1991), *overruled on other grounds by United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (*en banc*)); *see also United States v. Rohrig*, 98 F.3d 1506, 1513 (6th Cir. 1996) ("'[S]earches and seizures inside a home without a warrant are presumptively unreasonable.'") (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)).  "Exigent circumstances are situations where real immediate and serious consequences will certainly occur if the police officer postpones action to obtain a warrant."  *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003) (internal quotations omitted).  There are four general categories of exigent circumstances justifying a warrantless entry into a home: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others."  *Rohrig*, 98 F.3d at 1515.  In addition, the Court may consider three factors in determining whether exigent circumstances existed: "(1) whether the government has demonstrated that the need for immediate action would have been defeated if the police had

-12-

taken the time to secure a warrant; (2) whether the government's interest is sufficiently important to justify a warrantless search; and (3) whether the defendant's conduct somehow diminished the reasonable expectation of privacy he would normally enjoy." *Thorne v. Steubenville Police Officer*, 463 F. Supp. 2d 760, 772 (S.D. Ohio 2006) (citing *Rohrig*, 98 F.3d at 1518), *aff'g in part* 243 Fed. Appx. 157 (6th Cir. 2007).

The Defendants argue that there was no constitutional violation because the prohibition against warrantless entry into a person's home does not apply to arrests made in a person's doorway; such arrests may be effected solely on the basis of probable cause. The Defendants cite two cases from within the Sixth Circuit in which courts have concluded that an arrest begun in someone's doorway or at the threshold to their house can be considered "an outside – not inside – arrest." *United States v. Archibald*, 589 F.3d 289, 297 (6th Cir. 2009) (doorstep arrests are considered made outside the home); *United States v. McLemore,* 2006 WL 572353, at *8 (E.D. Wis. 2006) (arrest made at doorway of apartment is outside the home). In these cases, unlike in the instant case, the primary question to be answered was the legitimacy of the police officers' search inside the defendants' homes following a threshold arrest. In other cases directly concerning the constitutionality of warrantless doorway arrests, however, the Sixth Circuit has concluded that threshold arrests made without a warrant in the absence of exigent circumstances can be a violation of the Fourth Amendment. *Denton v. Rievley*, 353 Fed. Appx. 1 (6th Cir. 2009); *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005); *United States v. Saari*, 272 F.3d 804 (6th Cir. 2001); *Hameline v. Wright*, 2008 U.S. Dist. LEXIS 49643 (W.D. Mich. 2008). Procedurally and factually similar to the matter now before the Court, these cases are ultimately more persuasive.

-13-

In *Cummings*, two police officers were investigating a domestic disturbance call at 1115 Peerless Avenue in Akron, Ohio. *Cummings*, 418 F.3d at 679. The plaintiff's girlfriend told them that the plaintiff was at his house at 1125 Peerless Avenue, and the officers went there to question him. *Id.* The plaintiff's front door consisted of an outside screen door and an inside entry door. *Id.* One of the officers opened the outside screen door, knocked on the inside entry door, and waited for the plaintiff. *Id.* The plaintiff initially came to a window from inside his home and only came to the front door after the officers requested that he do so. *Id.* He partially opened his inside door and denied the officers' request to enter his house. *Id.* While speaking with the plaintiff, one of the officers smelled the odor of marijuana emanating from inside the plaintiff's home. *Id.* When asked about it, the plaintiff attempted to close his front door and end the encounter. *Id.* He was unable to, however, because one of the police officers had placed his foot inside the doorway. *Id.* The officers then pushed the inside door open and entered the plaintiff's home. *Id.*

The plaintiff filed a § 1983 lawsuit against the officers for, among other things, warrantless entry into his home in violation of the Fourth Amendment. *Id.* at 680. The court granted the defendants' motion for summary judgment on the warrantless entry claim on the ground that defendants were entitled to qualified immunity. *Id.* The Sixth Circuit reversed, distinguishing *United States v. Santana*, 427 U.S. 38 (2007). In *Santana*, the Supreme Court concluded that a person standing in the doorway to her house was in a public place for the purposes of the Fourth Amendment and therefore able to be arrested on the basis of probable cause alone. *Id.* at 42. The essential difference between the defendant in *Santana* and the plaintiff in *Cummings* was their expectations of privacy as revealed through their behavior. In

-14-

*Santana*, the defendant stood in her doorway before the police arrived in full view of the general public.  *Santana*, 427 U.S. at 42.  In *Cummings*, in contrast, the plaintiff only appeared at his doorway at the command of the officers, never fully opened his door, refused their request to enter his house and tried to end his encounter with them by closing his door; through these actions, he "manifested his intent to keep the inside of his home private."  *Cummings*, 418 F.3d at 685.  Because the arrest was initiated after the plaintiff manifested his desire for privacy, the warrantless arrest, unsupported by consent or exigent circumstances, violated the plaintiff's right to be free of warrantless entry into his home.  *Id*. at 686-87.

Likewise, in *Hameline*, the plaintiff in a § 1983 suit opened his inside entry door in response to a knock from the police.  *Hameline*, 2008 U.S. Dist. LEXIS 49643, at *4-5.  The plaintiff refused the police officer's request to step outside his house, attempted to close his door, and was prevented from doing so by the officer's foot in the doorway.  *Id*. at *5.  The plaintiff tried to back away from the officer into his home, but the officer grabbed his wrist.  *Id*.  Because he did not release his grip on the plaintiff, the officer was drawn into the plaintiff's house as the plaintiff tried to back away from the officer.  *Id*.  The plaintiff was subsequently arrested inside his living room.  *Id*. at *6.  The plaintiff brought a § 1983 suit for, among other claims, warrantless entry into his home.  *Id*. at * 1.  Defendants filed a motion for summary judgment alleging qualified immunity; the district court denied the motion, concluding that the plaintiff "had a reasonable expectation of privacy as he spoke with" the officer at his door.  *Id*. at *13.  Because the plaintiff came to the door only in response to the officer's knock, indicated throughout the conversation his desire to limit his contact with the police, refused to come outside the house, and tried to close the door, the plaintiff "clearly manifested his desire to keep

his home private." *Id*. at *16.  The officer's entrance into the plaintiff's house–committed when he reached into the house to grab the plaintiff's arm–was therefore unreasonable, and, because no exigent circumstances existed, was in violation of the Fourth Amendment.  *Id*. at *16-17, 22.

The facts of the case *sub judice* are nearly indistinguishable from those in *Cummings* and *Hameline*, and the Court therefore concludes that the Defendants' entrance into the Plaintiff's home was unreasonable.  The Plaintiff, like the plaintiffs in *Cummings* and *Hameline*, only came to her door in response to knocks by the police officer.  The Plaintiff, not once but three times, tried to close her door on the Defendants.  She turned off her interior lights and repeatedly told the Defendants in no uncertain terms that she wanted them to leave.  In the Plaintiff's version of events, which the Court must credit, she did not extend her arm across her doorway or otherwise exit her home.  She did not "expose [her]self to public view" and, through every word and gesture, indicated her intent to "maintain[] an expectation of privacy;" she was "therefore in [her] home and not a public place."  *Denton*, 353 Fed. Appx. at *5.  When the Defendants reached into the Plaintiff's home to grab her wrist and arrest her, they violated her right to be free of warrantless entry into her home.

The arrest of Ms. Zar at her doorway thus constitutes a violation of her constitutional rights unless the Defendants can show the existence of an exigent circumstance justifying a warrantless entry into her home.  The Defendants first argue that the need to ensure the safety of the infant was such an exigent circumstance.  Assuming the Plaintiff's version of the facts to be true, as the Court must, no reasonable officer would have believed that the infant's safety was in jeopardy such that immediate action was required.  According to the Plaintiff, Mr. Zar did not tell the police that his baby was in danger, and the baby was clearly visible in his aunt's arms

-16-

while the police were questioning the Plaintiff.  That the baby was crying could have meant any number of things, but, once the child appeared at the doorway unharmed, is not sufficient of itself to support a fear that the baby's safety was in jeopardy.

The Defendants next argue that their own safety constituted an exigent circumstance. Under the Plaintiff's version of events, the Plaintiff never punched or otherwise touched the Defendants; at worst, she yelled and cursed at them.  Indeed, even under Defendant Payne's account, the Defendants entered the Plaintiff's home before she punched Defendant Trowbridge. The Plaintiff's clear intent was to close her door and cease her encounter with the Defendants, who could have no reason to fear a woman who they significantly outweighed and who was behind a closed door in her own home.  The Defendants have therefore not rebutted the presumption of unreasonableness, and the Court concludes that Defendants violated Plaintiff's constitutional right to be free from warrantless arrest inside her home.

**b.  Whether the Violation Involved a Clearly Established Constitutional Right of Which a Reasonable Person Would Have Known**

The Plaintiff's right to be free of warrantless entry into her home when she has manifested her desire to keep her home private has been clearly established at least since the Sixth Circuit decided *Cummings* in 2005, three years before the Defendants' actions in this case. It is therefore clearly established law that the Defendants' entry into the Plaintiff's home was presumptively unreasonable.

The absence of exigent circumstances was also clearly established.  The risk of danger exception to the warrant requirement necessitates "a risk of serious injury posed to the officers or others that required swift action."  *United States v. Huffman*, 461 F.3d 777, 783 (6th Cir. 2006)

-17-

(citing *United States v. Whren*, 517 U.S. 806, 813 (1996)).  In *Thacker v. City of Columbus*, 328 F.3d 244, 254 (6th Cir. 2003), the Sixth Circuit concluded that it was "a close question" whether officers who responded to a report of stabbing and were met at the door to the residence by a person with blood on his legs and shorts, with a bleeding hand, and appearing intoxicated satisfied the risk of danger exception.  The facts known to the officers in *Thacker* presented a much stronger case for violating the constitutional sanctity of a the home than in the instant case, and it would be clear to a reasonable officer that the Defendants' conduct was unlawful in the situation they confronted.  *Saucier*, 533 U.S. at 202; *see also Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002) ("[A] right can be clearly established even if there is no case involving 'fundamentally similar' or 'materially similar' facts.  Rather, a right is clearly established when 'the reasoning, though not the holding,' of a prior court of appeals decision puts law enforcement officials on notice, or when the 'premise' of one case 'has clear applicability' to a subsequent set of facts.") (quoting and interpreting *Hope v. Pelzer*, 536 U.S. 730, 743-44 (2002)).

### c.  Whether the Plaintiff Has Offered Sufficient Evidence To Indicate That What the Defendants Allegedly Did Was Objectively Unreasonable In Light of the Clearly Established Constitutional Rights

The Plaintiff has provided affidavits from herself and two witnesses to support her allegations that the Defendants entered her home without a warrant after she had manifested her desire to maintain the privacy and sanctity of her home.  Her evidence rebuts the Defendants' contention that she exited her home by poking her finger in the Defendants' faces or by punching Defendant Trowbridge and constitutes sufficient evidence to support the claim that the

Defendants unreasonably entered her home without a warrant in violation of her clearly established constitutional rights.

The Defendants have therefore failed to show that they are entitled to qualified immunity on the Plaintiff's warrantless entry claim, and the Court **DENIES** the Defendants' motion for summary judgment on this count.

## 2. Excessive Force

The Plaintiff alleges that the Defendants' use of force against her – beginning with grabbing her wrists to pull her out of her home and continuing with throwing her to the ground and dragging her to the patrol car – was unreasonable under the Fourth Amendment.  The Defendants in their Motion contend that this claim is barred by the doctrine of qualified immunity because the use of force against the Plaintiff was not unreasonable and because, if a constitutional violation occurred, it was not clearly established.[4]

There is a constitutional right to be free from excessive force during an arrest.  *Graham v. Connor*, 490 U.S. 386 (1989).  Claims for excessive force in the course of an arrest, stop, or seizure are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard."  *Id*. at 388.  In assessing an excessive force claim in a motion for summary judgment, the Court must construe all the facts in the record in the light most favorable to the Plaintiff. *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010).  In order to determine whether the force used during an arrest or seizure was objectively unreasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

---

[4]It should be noted that the Plaintiff's claim for excessive force is not barred under *Heck* by her convictions in state court.  *Donovan v. Thames*, 105 F.3d 291, 294 (6th Cir. 1997) (state conviction for resisting arrest did not bar federal excessive force claim).

countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal citations omitted). The Court should look to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The reasonableness must be judged from the point of view of the officer on the scene at the time the force was used. *Id*.

In a qualified immunity analysis, the last prong requires the Court to determine "whether the plaintiff offered sufficient evidence to indicate that what the [government] official allegedly did was objectively unreasonable in light of the clearly established constitutional rights;" it cannot be decided on summary judgment where there are contentious factual disputes over the reasonableness of the use of force. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998); *see also Sample v. Bailey*, 337 F. Supp. 2d 1012, 1021 (N.D. Ohio 2004) (citing *Sova* and finding summary judgment inappropriate because "whether [the police officer's actions] were reasonable is contingent on the fact-finder's resolution of [the relevant] factual conflict.").

Under the *Graham v. Connor* analysis, the Court must consider totality of the circumstances to ascertain whether the police used excessive force. In this case, however, many of the underlying facts that would determine whether the officers' use of force was reasonable are in dispute (i.e. whether the Plaintiff threw a glass dish at Mr. Zar and the infant, whether she punched Defendant Trowbridge in the face, and whether she purposefully kicked Defendant Payne in the throat). If the jury determines that the Plaintiff had physically assaulted Mr. Zar and the Defendants, then the Defendants' actions were reasonable under the Fourth Amendment. *Bouggess v. Mattingly*, 482 F.3d 886, 891 (6th Cir. 2007) ("Merely resisting arrest by wrestling

oneself free from officers and running away would justify the use of some force to restrain the suspect."); *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (concluding that use of force to handcuff a person who was twisting and turning was reasonable).  If, on the other hand, the jury determines that the Plaintiff did not physically assault anyone, then the Defendants' actions were not reasonable under the Fourth Amendment.  *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004) (denying qualified immunity on excessive force claim against officers who knocked plaintiff onto the ground, shoved her into a display case, and twisted her arm during arrest for trespassing when plaintiff was significantly smaller than either officer and was not resisting arrest).  Because "the reasonableness of the use of force is the linchpin of the case" and "the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability."  *Sova*, 142 F.3d at 903.  Thus, Defendants' Motion for Summary Judgment on Plaintiffs' excessive force claim is **DENIED**.

## V.  CONCLUSION

For the reasons set forth in this Opinion, Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.  The Motion is **GRANTED** with respect to the Plaintiff's claim for warrantless arrest in violation of the Fourth Amendment (First Claim).  The warrantless arrest claim is accordingly **DISMISSED** against all Defendants.  The Motion is **DENIED** with respect to the Plaintiff's claims for warrantless entry (First Claim) and excessive use of force (Second Claim) under the Fourth Amendment.

**IT IS SO ORDERED.**

   _s/Algenon L. Marbley_____
   **Algenon L. Marbley**
   **United States District Judge**

**Dated: January 12, 2011**

-21-